We'll call the next case, Dr. Jensen v. Dr. Brown. Dr. Jensen v. Brown. Good morning, Your Honors. I'd like to reserve two minutes for rebuttal. My name is Daniel Ortner, on behalf of the appellant Lars Jensen, who's here with us in the courtroom. Professor Jensen was disciplined and almost fired for his exercise of his First Amendment rights. The district court erred for three reasons in its dismissal of Professor Jensen's complaint. First of all, Professor Jensen should have been entitled to amend his complaint to fix any pleading defects in the complaint. The right to amend a complaint is given with extreme liberality under this court's precedent, and the district court didn't even explain its reasoning why it didn't give Professor Jensen a right to amend. That is reversible error under this court's precedent. Second, Professor Jensen suffers ongoing harm as a result of the adverse material that remains in his employment file. The district court therefore erred in finding that his claims were barred by sovereign immunity. Third, Professor Jensen's right under this court's decision in Demers v. Austin to express himself on matters of public concern related to his teaching and scholarship was violated here, and the district court didn't even apply the relevant test. It didn't apply the Demers-Pickering test to the facts of this case. That was an error not to apply the test. And then when the court does do so, Professor Jensen's right to speak clearly outweighs any interest that the college has in disciplining Professor Jensen for his speech. Wait a second. Do we even decide that at this point? I mean, the governmental interest is the government's defense, and they haven't given an answer to the complaint. Is that right? This was on a motion to dismiss. And really, I mean, the fact that this is a motion to dismiss is a big factor in this appeal, Your Honor, because in the motion to dismiss stage, the district court should have construed the complaint in the light most favorable to Professor Jensen, should have made all inferences in his favor. Isn't the case law specifically saying that under these circumstances, except if it's obvious from the complaint that there is no chance that the weighing favors the plaintiffs, that it shouldn't be decided on a motion to dismiss? Well, in a motion to dismiss stage, again, as you said, I mean, there isn't a discovery here. You really have to take the allegations. But there's specific case law in this. I don't think it's in your brief, but there is. Well, yes. I mean, the Demers case, obviously, is the case that most clearly establishes Professor Jensen's right in this case. The other cases where the court has said, like the case Moore v. Washington, for instance, v. State of Washington, the court has said the district court has to apply the relevant test. It can't just say it's not clearly established. It has to look at the facts and apply the Demers Pickering test to the facts of the case. So the district court erred in just failing to actually apply the relevant test to the facts of this case. And when you do so on qualified immunity, you look at the facts here, you look at the Demers case. Demers really is a close analog to this case. There you have a professor who passed out material to his colleagues in the university. It was a pamphlet. It was criticizing the university's actions, what they were doing with the department that he was a part of in the communications department. And he was disciplined in very much the same way as Professor Jensen was. There was an audit and a review and adverse material in his file, negative evaluations. Really, on all fours in all meaningful respects, that case establishes Jensen's clearly established right in this case. So the district court really erred in failing to look at the facts of the Demers case and recognizing how closely analogous they are to the facts that we have here. And really here, what you have is a case where you have the professor's right to speak out. As the court recognized in Demers, that's a highly protected right given the university setting. When you apply Pickering or the Demers test, you have to look at the context in which it's taking place. This court has recognized repeatedly that universities are places where free speech is paramount. This court has recognized also that in the employment setting in universities, you expect a great degree of debate and discourse and disagreement even. In the Damien case, for instance, the court mentioned that the debate in the college setting is expected to be vigorous, argumentative, unmeasured, and even distinctly unpleasant in its nature. So you expect a certain level of disagreement, of dissent in a university setting. In the case of Bower v. Sampson, the court said that the vigorous exchange of ideas and the resulting tension between an administrator and its faculty is as much a part of college life as homecoming and final exams. You expect a degree of disagreement. And so when the university here said Professor Jensen was being insubordinate, when he just passed out flyers during a break, the complaint says it was during a break of a public meeting where he was allowed to be there. He was passing out material to his colleagues. In light of the college setting, that — Does it matter whether — there seems to be some dispute whether this is a public meeting or what that means. Doesn't it matter? I don't think it matters. I would say at this point, this is a motion to dismiss on the complaint. How much does public mean? It seemed to be open to the community meeting the school community. It was announced publicly. Anyone could sign up for the Zoom of the meeting to join the meeting. Anyone could come to the meeting. Anyone meeting I could? You could have signed up for it? Yes. Yes, Your Honor. Does that make a difference? Suppose it was only open to members of the math department or maybe it was only open to people in the college? No, it doesn't make a difference, Your Honor. This court has said — Demers, for instance, Professor Demers there passed out material to his colleagues. It doesn't have to be publicized outside of the college community to be — In fact, there are pickering cases where the individual was just talking to one other person. That's right. Connick V. Myers is an example of that where it was just colleagues in the lunchroom that the person there was talking to. So you don't need it to be publicized widely, and this court has said so expressly. Okay. So although the defendants seem to make a big deal of it, it doesn't really matter? No, it doesn't. The facts should be construed in light most favorable to Professor Jensen. But the facts don't matter. It doesn't matter whether he was speaking to the math department, whether it was just members of the math department or members of the school community or the world. It doesn't matter. Yes, that's right, Your Honor. We agree with that. It doesn't really matter. He was speaking on a matter of public concern. This is concerning standards for the math department, lowering down the standards to make it easier for people to graduate. It's something that interests his colleagues, interests the public and employers. And he spoke about it, wrote about it to his colleagues and passed it out. As you said, Your Honor, it doesn't matter whether it was just to his math colleagues or to a broader audience. That is speech on a matter of public concern. He had a right to do so. And here there's no disruption. The other side actually in the district court disclaimed any interest in focusing on disruption. They don't even really try to argue that there was substantial disruption in this case. And the claim of insubordination simply doesn't hold up in light of the college environment. Just merely passing out material when your superior, your dean doesn't want you to is not insubordination under this court's precedent. And so really when you look at the facts here, the district court, first of all, didn't actually look at the facts carefully like it should have. And then when you do, this is a case where you have a clearly established right and the district court failed to recognize that. So what relief is Dr. Jensen seeking? So Professor Jensen is seeking a couple of things in this case. First of all, he's seeking injunctive relief from the district court to clear his file from adverse material in his file, to change his evaluations back to excellent, which is what he was entitled to had the retaliation not taken place against him. He's seeking an injunction. He claims in his complaint that there's an ongoing policy of retaliation against professors for his speech. So he's seeking an injunction against the ongoing policy of retaliation. And then also he's seeking damages as well. I mean, on that issue, it seems that you really would have to amend the complaint because there's nothing in the complaint specific about any other incident. Of other incidents of retaliation.  I think, you know, the complaint, again, the motion is misstaged. It needs to be interpreted liberally in light of the fact, you know, the allegations in the complaint. For instance, he points to — Does it even allege that this is a policy? He does allege that it's a policy, yes, in the complaint. It doesn't give any examples. It doesn't give any other examples. That's right, Your Honor. And again, the right to amend should have been given liberally and he should have been able to expand that. But he didn't need that. There's enough here. Really, I mean, we're talking about the sovereign immunity issue. It's a question of what is the nature of the relief that's being sought in this case. Is it like damages? I mean, I had always understood the sovereign immunity has to have to do with money. Right? This has nothing to do with money. Yes, exactly, Your Honor. Even some cases where there's money involved, as long as what's incidentally affects the fisc of the government, it's still seen as forward-looking. But here that's not even the case at all. There's nothing like that. He also says something about he wants to have — one of the reasons he wants to have this expunged and he wants — I guess he wants an order that he should get merit pay going forward based on a proper file. Yes. He says there's an ongoing effect of this material on his file. So it's an ongoing harm. Every day that the material is in his file, it's hurting him. He's not very specific about that either, but he seems to suggest that he is getting paid less because of what's in his file.  And it's affecting him every time he's being evaluated. He also mentions that it limits his — What do you mean it's affecting him every time he's being evaluated? In the question of whether he gets a merit pay increase. They consider past performance in that process. But that's — he's not looking for back pay. He's looking for a future. He's looking for it not to affect his pay in the future. Yes. He is also seeking damages, and that's why the qualified immunity is an issue in the case. But for the forward-looking relief that's, you know, related to sovereign immunity, that he's seeking in the future, the file to be expunged. But even then, that might be a problem on an Edelman v. Jordan problem on — as to the Eleventh Amendment. Under Edelman — Is that the case for money? Yeah. I think the court in Edelman says, you know, if you're seeking — you know, even if money might eventually be involved in it, as long as what you're seeking is forward-looking in its nature, that is fine under Ex parte Young. So I would say that that is still covered. But here, there's clear relief that is forward-looking, including the removal of material from his file. You suggested at one point that they could still have another termination hearing against him based on the current file. The defendants say, no, they couldn't. Yeah. That's right. They could, Your Honor. Nothing has been removed from his file. The allegations against him are still there. He's not been cleared. What if he doesn't do anything again to aggravate them? There's no guarantee they couldn't go after him again for it. But the government says specifically that there's some rule that says they couldn't. My understanding, Your Honor, is that there's nothing preventing them from doing so. It's still in his file. They make it sound like — they try to make it sound like it's an exoneration of some kind, but it was just a decision not to fire him. But the material remains in his file. There's no clearing of his name. And that's what's having an ongoing chilling effect on his speech as well. He does mention his complaint that he's chilled — this is paragraph 88 of the complaint, the amended complaint — chilled from participating in ongoing speech on campus as a result of the fact that he now knows that they'll come after him if he speaks out critically of the administration's preferred policy. That's another ongoing harm under the fact that this is a First Amendment case. The chilling effect is particularly pernicious here. How do you propose to amend your complaint? So there's several things that we would — that Professor Jensen would add to his complaint. Actually, before the district court, there was, in the motion to Smith's briefing, additional material that came out in Discovery, where the magistrate allowed Discovery, emails that showed intention to go after Professor Jensen for his speech, that established the motives and what was going on before the faculty of — the campus event where he spoke out. That material, you know, the district court was aware of that, and that would be added to any amended complaint and didn't allow an amendment. There are some allegations the district court pointed out were not alleged as clearly as they might have liked it to be, like the procedural due process claim, for instance. They said, you know, we didn't adequately allege it and we're not going to consider it. That could be added to the complaint. Additional developments since the filing of the complaint regarding ongoing retaliation, ongoing effects, would be added to the complaint as well. I mean, I guess this is where we've gotten ourselves after Twombly and Iqbal, but why should all this be in the complaint? I mean, why shouldn't we simply be going on to Discovery and summary judgment or trial? What's the point of putting this in the complaint? You have enough — you have pieces of this in the complaint and you can stand on them. I would suggest that you don't get up next time and say first that I want to amend my complaint. Well, I think you're right. We do have more than enough in our complaint to survive both qualified immunity and sovereign immunity and to establish Professor Jensen's injury here. And especially when you take into account the fact that a lot of what they're arguing is really affirmative defenses. I mean, qualified immunity is an affirmative defense. There's no obligation in the complaint to allege the rights there or to point to cases in the complaint. It seems like they want that kind of level of pleading where you have to point to specific cases, rebut defenses in that context, and that's just not required under — especially in light of the 12B6 standard. Professor Jensen has — his complaint should have survived the motion dismissed and this — the district court was wrong and this court should reverse. Do you want to reserve? Yes. Very well. Thank you. Let's bring this down to my size. Good morning, Your Honors, and may it please the Court. My name is Kaya Beverly Graham. I am counsel for the Appellees in this matter. I'm going to start with talking about the qualified immunity issues in this case. The key question there, as the argument has been framed, is whether or not the Demers decision stands for a clearly established right. The case law, in particular the Wesby case from the Supreme Court, which is very recent, gives us a pretty exhaustive understanding, and I lay it out in my briefing, as to what we need to establish a clearly established right. One of the key points that isn't present here is that the administrator on the ground, facing the circumstances, needs to be able to understand the contours of the right. The administrator needs to be able to apply the rights to the facts facing them without any doubt. The Demers case doesn't establish a right to that degree, and that's because the Demers case actually found there was no qualified immunity on the facts at issue and remanded the district court to look at the issue of weighing the governmental interest. And the Demers court spent some time discussing the complexity of weighing governmental interest. The court indicated that, especially in the academic context, those interests  How can we do that at all on a 12b-6 in general? Your Honor, I think that's generally a difficult task. In this case, it's not, and that's because of the nature of the allegations in the complaint. The crux of the complaint, and this really cries through the allegations, is really the events at the math summit at TMCC. But it's not all of it. I'm sorry? It's not all of it. There are some conclusory allegations about other things, but the real weight, the real meat of the complaint is all centered around what happened at the math summit. And Dr. Jensen alleges that with verified allegations, so what ultimately could be treated as evidence, and he describes it in great detail. And what he describes is not a public meeting. It's actually a professional development event that was not open to the public. There's no allegation. This is a public forum. What difference does it make? It makes a difference because that goes directly to the supervisor's government interest, Your Honor, which I can explain. At that work meeting, which was First of all, it was open to the whole college, right? Not just to the math department. It was open to faculty who were eligible for professional development. And that's on the record. We can see what Dr. Jensen attaches as the agenda on the record. That's at 57. There's an indication that this is a professional development event. There's actually a link for faculty to click on to register. It's open to the community. Well, I'm not sure what the community means, and that's part of the problem. It's a little vague. I thought it meant the college. Well, those at the college who attend professional development events. So that doesn't necessarily include all classes of employees. But some class of employees were invited to this event. That is true. But as the complaint tells us, it was specific. The event was pursuant to a very specific agenda. It had a very specific purpose, which was to go over implementation of a new policy that had come down from the college's Board of Regents. It was not open to any discussion about this policy. It was specifically for the purpose of discussing implementation of the policy. It was a working meeting. It was also important. I don't know where this document is that you just referred to. I just want to make sure I have the precise site. So that's at ER 57 on the record. And this is a document that is labeled as the Math Summit Agenda, which in turn is incorporated by reference in the complaint. And on that document, you can see there's an indication for the Math Summit. And right below it is instructions to pre-register for the session using the ProDev website, which our position is, manifestly refers to professional development. Importantly, at that meeting, as is alleged in the complaint, that meeting was pursuant to this agenda. The agenda was established, according to the complaint, by Dr. Julie Ellsworth, who we can clearly infer from the complaint was Dr. Jensen's supervisor at the time. What the complaint alleges is that during a question and answer session that was specifically supposed to be about implementation of this plan, Dr. Jensen announced that he wanted to look under the hood, which was clearly an indication he wanted to criticize the plan, not discuss its implementation. And we know that he wanted to criticize the plan because he attaches to the complaint a document that he ultimately typed up that reduced his thoughts to writing, which has nothing to do with implementation of the plan and is purely criticism of this mandate that came down from the systems board. So our position is that Dr. Jensen's supervisor had, based on the allegations in the complaint, a reasonable interest in keeping him on topic. Case law tells us we don't have to wait for a situation to devolve into actual disruption. If it's clear we can see it coming down the road, that's sufficient. And because Dr. Jensen alleges all this in the complaint, this is an issue where we need further discovery. He tells us in great detail in his verified allegations what happened at that meeting. When his supervisor instructed him to stay on topic, he left the event, typed up his comments, and instead of posting them on a board that was available in the room for this purpose, as his supervisor instructed him, he decided to violate her instructions and hand them out directly to participants. When his supervisor indicated he should stop... During a break. I'm sorry. During a break. He does allege it's during a break, but is also still in the same room as the meeting is taking place. I'm not aware of any authority that says that the administrator's authority ceases just because the employee's on a break. There's lots of conduct that an employee could engage in that would be problematic, and they shouldn't be able to get away with it just because it's on a break. So I'm not sure that makes a difference. What is critical here is that his direct supervisor repeatedly instructed him to cease doing what he was doing. This is alleged in the complaint. And in this room full of people, he openly defied her, refused to follow her instruction, and continued to pass out the document, even though he had an alternative means of expression available to him. So our position is that on these facts, as they're alleged in the verified complaint, the governmental interest is absolutely clear. The administrators had a reasonable interest in preventing this conduct. They had an interest in preserving discipline, and they had an interest in the supervisor's authority not being so directly challenged in front of all of her colleagues. I think that the degradation of her authority, the challenging nature of that conduct in the context of the complaint is manifest. Because of this governmental interest, under Demers there's a complicated balancing that has to take place to determine whether or not the government's interest outweighs Dr. Jensen's interest. And because of the necessity of that complicated balancing, this couldn't possibly be a case where the law is so clearly established, as Wesby requires, that any administrator could easily apply it on the ground, the contours are clear, et cetera. The contours here are not clear because of this complicated balancing that has to take place. What we're suggesting is that the administrators could have held the Demers case in their hands while making these decisions, and what is in the four corners of that case is not clear enough to establish that the discipline for this insubordinate conduct is barred by the First Amendment. And so that for that ---- It would seem to me that if you take the allegations in the complaint in the light most favorable to the plaintiff, the pleader, one could reasonably conclude that his so-called criticism, as you described it, was nothing more than a way of raising a discussion about the proposed changes that were going to take place at the college as a result of the change to a co- What was it? A co- A co-requisite model. A co-requisite plan as opposed to a prerequisite scheme. Why isn't that? Well, the way we should analyze it. Well, we have the document that was passed out in front of us, and so we can see clearly from the four corners of that document that really what it is is a criticism. It's not about implementation, which was the agendized notice topic of that day. Well, he just wanted to ---- Why isn't it that he just ---- He passed out the document, and he wanted to raise a discussion about what he saw as the negative consequences of this new plan. Well, I don't understand Demers to provide an absolute right for that. We have to keep in mind, Your Honor, this is a workplace. This is a workplace meeting. No, but your whole argument was that, look, based on the allegations in the complaint, there's no qualified immunity. I mean, there is qualified immunity here. There is qualified immunity. Right? Yes, that is correct. That is correct. But that to me suggests that you're not taking the allegations in the complaint in the light most favorable to Professor Jensen. Well, my understanding of that requirement is I think there's a reasonableness in there, reasonably most favorable, reasonably favorable to the plaintiff. I don't think that we ---- I don't think that anything requires us to take allegations to such an extreme understanding that it kind of cuts against what the document itself is telling us. And our position is that the document he's attached, which shows his comments, makes clear ---- Well, you added, as I listened to your comments, you added you don't have ---- I got the impression that you were suggesting that by his ---- what he did, it caused disruption rather than discussion. Well, as my colleague pointed out, our position isn't that there was actual disruption, at least not as is alleged to date. And nothing requires the Administrator to wait for actual disruption. Well, there's nothing in the complaint that says there was any disruption. Correct. So our view is that regardless of the question of disruption, what we have here, as alleged, is clear from the allegations, is a naked manifest challenge in a room full of people to a supervisor's authority at a meeting at work. And our view, this is not alleged to be a public forum. Dr. Jensen could have stepped outside of the room into one of the public spaces at the college and criticized the plan to his heart's content. But he was in a meeting room. A meeting was taking place. And in that context, our view is that it is not at all clearly established under Demers that the Administration didn't have the right to act. Well, let me ask you this. Was it a meeting where ---- what was the professor's name that was conducting the meeting? Dr. Ellsworth. Dr. Ellsworth. Was it Dr. Ellsworth was there just to tell the audience that this is what was going to happen? I'm sorry. I didn't understand. Was Dr. Ellsworth there just as she led this meeting, was she there just to tell the audience, the members of the group that was there or the people that were there, that this co-requisite scheme, this is how it's going to play out? Or was it there, let's, you know, what can we do to implement this the most effective way? It was the former. You know, we want to solicit ideas, you know, complaints, concerns. It was the former, Your Honor. The former. She was just there to tell them this is what we're doing and no discussion. And any criticism is off the base. Questions were specifically contemplated. But this is an operational meeting. So the purpose is to tell, it was indeed to tell folks. I mean, I've read the agenda now. It doesn't certainly read that way. Well, that implementation was. First of all, it's clear from the agenda that it was open to the whole college. That's clear from the agenda. Yes, employees of the college, not the public at large, which is why it's not a public forum, which is one of our points.  Okay. And the, but it also, I'm sorry, I have to just find it again. Go ahead. I'll just jump in real quick. So Demers was a summary judgment case, correct? Correct. This case is not. That is correct. It seems to me that's a pretty big hill you've got to get over. Again, and. So get me over that hill. Again, Your Honor, as I mentioned before, in many cases I would agree. And that might be the end of it and simply allow repleting. But in this case, the clear core nucleus of what Dr. Jensen is complaining about is the math summit. And he describes that in tremendous detail with verified allegations. There's no room to move to those verified allegations. There's no room to change the allegations to suggest that he didn't defy Dr. Ellsworth's authority. There's really nowhere else to go on this record. And there's no indication that there's anything that's going to. He, she told him to stop talking and he stopped talking, right? Then he went and he printed out this piece of paper and he brought it and she didn't tell him don't bring a piece of paper. I need to. I'm sorry. And then so during a break he hands out this piece of paper. Now, she obviously took great offense, but I don't know that that was, on the pleadings, without any evidence or anything, a defiance of something she'd said because she didn't say it. Well, Your Honor, what the complaint alleges is that she didn't tell him in the first instance to stop talking. She told him, if you want to comment on this, go post it on the board that's provided for that purpose. And that is that he directly defied that instruction. So that was the first instance of insubordination. He then continued to try and pass the paper out in defiance of her instructions. So there was, our view, was a clear instruction that he acted in defiance of. Well, this all-morning summit is a time for sharing planned course and curriculum changes across the math department and with members of the broadest TMCC interest. And then we're going to learn about various things. And then they're going to have, later, they're going to have breakout sessions to talk about it, breakout sessions starting at 1030. So it certainly seems as if there was supposed to be a discussion and not simply a bunch of edicts. Oh, indeed. It was meant for a discussion, but on a very particular topic, which is implementation. Implementation presupposes this is what we're doing. Okay. So to — That's a different answer than you gave Judge Pius before. Oh, I may have misspoken, and I apologize. I think that's what I intended to express, and if I didn't express that clearly before, I apologize. Your Honors, if I may, and briefly, just on the sovereign immunity point, as my time is almost up. Our position is quite simple. To be entitled to and accept the Ex parte Young exception to sovereign immunity, the complaint needs to adequately allege some kind of entitlement to prospective injunctive relief. And our position is that — Where did this come from? I mean, my understanding is that all of the Supreme Court cases on qualified immunity deal in some way or other with money. I mean, with sovereign immunity. And that the rationale in Adelman v. Jordan and all those cases is that once you're reaching the public fisc, then there's an immunity problem. And this has nothing to do with the public fisc. You're taking — I looked at — is it Papasan? You're taking a sentence out of context from Papasan or the district court was, because Papasan was a money case. And I don't understand why, when you're not dealing in money, any of this has anything to do with sovereign immunity. Well, numerous of the cases refer to an ongoing violation, and our position is — Yes, but they're always in the context of money. Well, Your Honor, our position is, nevertheless, that in order to be entitled to injunctive relief, even if we just — even step aside from Ex parte Young and just take a more backed-up, holistic view, to be entitled to injunctive relief, the complaint needs to plausibly allege some set of facts, which, if true, would establish what the relief is fixing. What ongoing harm is this injunction going to fix? And that's where the complaint is absolutely silent. Other than a few conclusory allegations of ongoing reputational harm or loss of employment, which don't have a shred of detail supporting them, there's no — What about the suggestion that they could — with all this documentation and the record and that the determination was simply not to fire him, that they could try to fire him again? Well, Your Honor, a couple points in response to that. I don't have the Nevada System of Higher Education code in front of me, but I can tell you that the sort of proceeding that Dr. Jensen was subject to has, I believe, a 180-day deadline to complete, and then those facts are done with. So there's really no realistic way that this is going to be relitigated. But another point would be you could always say that. Regardless of what happens in the litigation, if Dr. Jensen violates the college code, he could always be disciplined again. No, no, I'm talking about even if he doesn't do anything else. Well, there's no way to guarantee that somebody will never do anything wrongfully. But our position is that, nevertheless, in order to be entitled to injunctive relief, Dr. Jensen needs to allege some set of facts that — What about the suggestion that it's affecting his merit pay? I believe the allegation in the complaint is a speculative allegation. It may affect merit pay. I don't think there's any allegation that his merit pay has actually been affected in any way. And that points to our — to the very issue. What would an injunction accomplish here? Let me ask you this. Suppose we say he can't go forward now, and in two years they, in fact, say we're not going to give you a merit increase because of what's in your record. Can he sue then? Well, that would be a new harm. So I believe at that time he would be able to sue. A new harm, but it wouldn't be — but it would be based on things that happened years ago. Yes, I have to concede that would be, in that hypothetical, that would be based on things that happened years ago. But Dr. Jensen would still have relief due to the occurrence of the new harm. And at that time, under facts that are alleged like that, there might be a basis. And you wouldn't argue that there was a limitations period because he — I'm sorry? You wouldn't argue that there was a limitations period because he'd already — the underlying facts were established and they're in their file, and how can you go question him now? I think the claim accrues for purposes of limitations when the harm occurs. So under the scenario you've articulated, Your Honor, I don't believe I would have a statute of limitations argument. So those negative evaluations remain in his file? Well, first of all, the NG code, the Vada system of higher education code, requires that because Dr. Jensen wasn't terminated at his termination hearing, and we quibble over whether that's prevailing, but that count certainly looks like a victory to me, his evaluation was automatically upgraded. That's not my question. Well, so it's no longer really a negative. Negative evaluation, do they remain in his file? Well, what I was trying to indicate is I don't think what remains is actually negative anymore because the unsatisfactory was necessarily removed by operations of the college's rules. However, the files themselves, with the qualitative commentary that one might perceive as negative, yes, are in the file. So there's now an excellent evaluation in the file instead of the one that was there before? I don't believe the requirement is to upgrade to excellent. I think it goes to a mid-level satisfactory or something like that. But what's important is that even if that material is still in the file, nothing tells us what the injunction will do removing the file. Nothing tells us how an injunction removing the file is going to alleviate the harm that Dr. Jensen is allegedly occurring because he doesn't connect the file and the pleading to the harm. There's no allegation that the administrators are disclosing the file, causing this alleged reputational harm, these alleged career difficulties. There's no allegation that explains how the presence of the file flows into the supposed psychological harm that's being suffered. And that's the key problem. And I see that my time is up, Your Honor, but I'm happy to answer any additional questions. Thank you very much, counsel. Thank you, Your Honors. Thank you, Your Honors. A couple of quick points on rebuttal. First of all, on sovereign immunity, as the question asked us now, his file was not upgraded to the excellent that he was entitled to. It still says it was just the lowest level of satisfactory. And all the adverse material remains in his file, including the letter, the  All that's still there. So it did upgrade it from unsatisfactory, but it certainly didn't give him what he would have been entitled to without the retaliation against him. On the allegations for sovereign immunity, I would point the court to the RWV Columbia Basin College case. All that's required is that President Johnson allege, not prove, the ongoing harm. And he's clearly done that here in this complaint. He doesn't need to prove for sovereign immunity purposes. It really is a question of what's the nature of the relief he's seeking. Is it damages or is it ongoing? Do you think that this standard applies outside of a money context? No. And all the cases that we cite are clearly in our favor. They don't cite any cases going the other way. We cite several cases that show that expunging records, for instance, is a forward-looking relief. There are no cases to the contrary. Well, expunging records is fine. But more broadly, the sovereign immunity concern has always been in the context of the public face. That's correct, Your Honor. Turning really quickly to qualified immunity, again, at this point, this stage is at the motion dismissed. The facts have to be interpreted in light most favorable to Professor Jensen. And here you have, and I would just point the court to the fact that the other side disclaimed any interest in disruption as being one of their interests. They did so in the reply brief in the motion dismissed. On page five of their reply brief, they said it doesn't matter whether there was disruption. All they're relying on is this vague claim of insubordination. In this meeting where he was there, allowed to be there, passing out material to his colleagues, the fact that there was a decision doesn't mean the debate has to stop in light of this court's precedent in Adamian and others. The vigorous debate in college campuses doesn't move in a neat and tidy fashion where the decision is done and everyone has to fall in line. You expect ongoing vigorous debate in the college community over the right policy. That's what you have here. As Your Honor has mentioned, Professor Jensen didn't keep asking questions. He sat down and then went and passed out a piece of paper that he typed up to his colleagues. That, under this court's precedent, is not insubordination and it does violate his clearly established right. This court has also found that the right was clearly established in other cases. Just recently in Dodge v. Evergreen School District No. 114, two years ago, this court found that it was a high school teacher in that case. But his right under the Pickering test was clearly established. The hat. Was it the hat case? It's the hat case. Yeah, the Trump hat case. Yep, that's right. And there was actually evidence of much greater disruption in that case than here, but the court still found that the right was clearly established. It does happen that there are cases where it's clearly established. This is one of them where the facts so clearly favor Professor Jensen that any reasonable administrator should have known that his rights were violated by stopping him from speaking and punishing him for his speech. Thank you very much, counsel. Thank you. Thank you both for your, again, fine advocacy in this matter. This case is submitted. And one moment.
judges: PAEZ, BERZON, OWENS